UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW ADAMS,

          Plaintiff,

          v.

FORT MYER CONSTRUCTION
COMPANY,

          Defendant.

Case No. 1:25-cv-1949 (TNM)

**MEMORANDUM ORDER**[*]

As associate general counsel to Fort Myer Construction Corporation, Matthew Adams complained about racial discrimination within the company. Adams says the company fired him for those complaints. He now sues his former employer, bringing retaliation claims under federal and District law. Fort Myer moves to dismiss the Complaint. For the reasons below, the Court denies that motion.

**I.**

Adams began working as associate general counsel for Fort Myer in June 2022. Compl. ¶ 15, ECF No. 1. In that role, he "assist[ed] outside counsel in other litigation, such as employment-related claims and conducting internal investigations." *Id.* ¶ 17.

[REDACTED]

---

[*] Because the parties claim that facts in the Complaint are privileged, the Court first issued this Memorandum Order under seal on November 19, 2025. *See* ECF No. 24. Now that the parties have had an opportunity to propose redactions, this Court files this public version of the Memorandum Order.



Finch, meanwhile, was put on leave in early August.  *Id.* ¶ 32.  With Finch gone, Adams became acting general counsel.  *Id.* ¶¶ 32, 33.  But that was short-lived:  Adams himself was fired a month later.  *Id.* ¶ 35.

Adams promptly filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  Pl.'s Ex. A ("EEOC Charge") at 2, ECF No. 18-2.[1]  The EEOC issued him a right-to-sue letter in 2025.  Compl. ¶ 13.  Adams then turned to this Court.  He brings three claims: (1) retaliation under Title VII of the Civil Rights Act of 1964; (2) retaliation under 42 U.S.C. § 1981; and (3) retaliation under the D.C. Human Rights Act ("DCHRA").  *Id.* ¶¶ 36–58.

---

[1]  All page citations refer to the page numbers that the CM/ECF system generates.

Fort Myer moves to dismiss all three claims. Mot. to Dismiss, ECF No. 11-1. That motion is now ripe.[2]

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But while a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.

Because the same standards apply to Adams's three retaliation claims, the Court discusses all three under the Title VII retaliation framework. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010) (observing that Title VII and § 1981 retaliation claims have "essentially the same" framework); *Touvian v. District of Columbia*, 330 F. Supp. 3d 246, 251 (D.D.C. 2018) (explaining that DCHRA "requires the same showing" as a Title VII retaliation claim). Title VII makes it unlawful "for an employer to discriminate against

---

[2] The Court has federal question jurisdiction over the Title VII and § 1981 retaliation claims, 28 U.S.C. § 1331, and it has supplemental jurisdiction over the DCHRA claim, *id.* § 1367(a).

[an employee] . . . because he has opposed any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a).  To state a prima facie case of retaliation, Adams must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  Fort Myer contests Adams's showing on the first and third prongs.  Mot. to Dismiss at 6.  At this early stage, however, Adams's allegations are enough.

### A.

Start with the protected activity requirement.  Title VII's "opposition clause" prohibits employers from retaliating against an employee "because he has opposed" the employer's discrimination on the basis of race.  42 U.S.C. § 2000e-3(a); *see id.* § 2000e-2(a) (prohibiting discrimination on the basis of race).  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬  Compl. ¶¶ 20, 25–29.  At this stage, that is enough.

Fort Myer seems to agree that these allegations would be enough if Adams had been an ordinary employee, but, it says, Adams must do more because his job required him to investigate discrimination.  Mot. to Dismiss at 6–10.  Invoking the so-called "manager rule" applied in Fair Labor Standards Act ("FLSA") cases, Fort Myer argues that Adams needed to allege that he "engag[ed] in oppositional conduct outside" his role as counsel.  *Id.* at 7–8; *see DeMasters v. Carilion Clinic*, 796 F.3d 409, 421–22 (4th Cir. 2015) (describing the manager rule's origin).  That argument has some problems.  Most importantly, the FLSA's anti-retaliation provision is much narrower than its Title VII counterpart.  *See DeMasters*, 796 F.3d at 422–23 (summarizing the textual problems with applying the "manager rule" to Title VII); *see also Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022) (reasoning that the "manager rule" has "no basis

4

in the text of Title VII's opposition clause and actually contradicts the text of it"); *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 49 n.5 (1st Cir. 2010) (expressing similar concerns).

But that is an issue for another day. Even if the manager rule applies to Title VII retaliation claims, Adams passes it for now. ███████████████████████████████████████████████████████████████

███████████ Compl. ¶ 25. ███████████████████████████████████████

███████████ *Id.* ¶ 26. Drawing "all reasonable inferences" in Adams's favor, *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (cleaned up), the Complaint alleges that Adams transcended his official duties—including investigating "employment-related claims"—███████████

███████████████████████████████, Compl. ¶ 17. Courts applying the manager rule have found that allegations like these suffice at the motion-to-dismiss stage. *E.g.*, *Arnold v. Weld Cnty. Sch. Dist. RE-5J*, 677 F. Supp. 3d 1218, 1230 (D. Colo. 2023) (finding that a school superintendent plausibly alleged that "she acted beyond her ordinary job responsibilities" by "actively resisting" the continued employment of a principal "on behalf of employees that she believed were subject to discrimination").

Perhaps at summary judgment Fort Myer will be able to show the manager rule applies to Title VII retaliation claims *and* that Adams's job falls within that rule *and* that his complaints about the ongoing discrimination fell completely within the scope of his job. But the Court need not decide that now.

### B.

Consider now causation. Adams must plead facts giving rise to a "plausible inference" that "his protected activity was a but-for cause" of his termination. *Ho v. Garland*, 106 F.4th 47,

5

51 (D.C. Cir. 2024). That is not a high bar at the motion-to-dismiss stage. *See Jones v. Bernanke*, 685 F. Supp. 2d 31, 39–40 (D.D.C. 2010). And Adams's allegations clear it.

First, at the motion-to-dismiss stage, Adams "can meet [his] *prima facie* burden of alleging causation simply by alleging that the adverse actions were caused by [his] protected activity." *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007). And Adams's EEOC Charge says that he ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ EEOC Charge at 3; *see, e.g.*, *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 182 (D.D.C. 2019) (noting that EEOC complaints are subject to judicial notice as public documents).

Second, timing supports a causal inference. "A plaintiff can sometimes plead causation by relying solely on the fact that an adverse action shortly followed the plaintiff's protected activity." *Ho*, 106 F.4th at 52. That is true here because Adams plausibly alleges "close" temporal proximity between his last opposition ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ *Id.* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆ Compl. ¶ 28. The later end of this period would bring the incident within three months of his termination on September 8, 2023. *Id.* ¶ 35. And courts have suggested that conduct occurring less than three months before the adverse action is sufficiently "close" to create a causal inference. *See, e.g.*, *Pratt v. Pompeo*, 318 F. Supp. 3d 34, 40 (D.D.C. 2018) (holding that a plaintiff adequately pleaded causation by alleging that the adverse action occurred two months after the protected activity); *but cf. Ho*, 106 F.4th at 52 (suggesting that a three-month gap may "be too lengthy to raise an inference of causation"). More, though unnecessary to rely on here, Adams's EEOC materials suggest that his last protected act occurred a mere month before his termination. *See* Pl.'s Ex. B ("EEOC Rebuttal") at 3–4, ECF No. 18-3.

Fort Myer offers two responses, but neither justifies dismissal. First, it argues that Adams has not plausibly alleged causation because he "does not allege who made the decision to terminate his employment." Reply at 12, ECF No. 21-1. That is wrong. At the motion-to-dismiss stage, a plaintiff need not allege that the decisionmaker knew about the protected activity. *McManus v. Kelly*, 246 F. Supp. 3d 103, 116 (D.D.C. 2017); *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012).

Second, Fort Myer argues that Adams's temporary promotion severs any inference that he was fired for his prior complaints. Reply at 11–12. While favorable treatment of an employee may break the causal chain between protected activity and adverse action, *Seale v. DowntownDC BID*, No. CV 25-79 (RC), 2025 WL 1865028, at *5 (D.D.C. July 7, 2025), it is unclear whether Adams received favorable treatment. Fort Myer briefly promoted Adams to acting general counsel after his predecessor's firing, Compl. ¶¶ 32–33, but Adams's EEOC Charge paints that promotion as an intermediary step in "pushing the legal department out of the company," EEOC Charge at 4. And there is no suggestion that Adams received better pay or other benefits during his brief promotion. Fort Myer is, of course, entitled to contest Adams's account. But now is not the time for that. *See ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991) ("Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint.").

## IV.

Fort Myer raises significant concerns about Adams's claims. It remains to be seen whether these claims will survive summary judgment. But for now, he had pled enough to surpass the motion-to-dismiss stage's low bar.

For all these reasons, it is hereby

**ORDERED** that Defendant's [12] Motion to Dismiss is DENIED.

Dated:  December 8, 2025                                    TREVOR N. McFADDEN, U.S.D.J.