**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **MATTHEW ADAMS**, <br><br> Plaintiff, <br><br> v. <br><br> **FORT MYER CONSTRUCTION COMPANY**, <br><br> Defendant. | Case No. 1:25-cv-1949 (TNM) |

## <u>MEMORANDUM ORDER</u>

Matthew Adams claims that his former employer, Fort Myer Construction Corporation, fired him for complaining about racial discrimination within the company.  Fort Myer denies that version of events, explaining that it fired him—its former general counsel—for disloyalty.  And it meets Adams's discrimination claims with counterclaims for breach of fiduciary duty, legal malpractice, and conversion.  Adams moves to dismiss each count.  Although the conversion claim fails as a matter of law, the remaining claims survive.

## I.

Fort Myer Construction Corporation performs infrastructure construction work in the Washington, D.C., area.  Counterclaim ¶¶ 7–8, ECF No. 27 at 9–19.[1]  Jose Rodriguez and Lewis Shrensky co-founded the company in 1972, and it remains owned by their families' trusts.  *See id.* ¶ 9.  Rodriguez serves as Fort Myer's president and, until recently, Shrensky held the title of executive vice president.  *Id.*  The relationship between Shrensky and Fort Myer soured in summer 2023, sweeping employees into the drama.

---

[1]  Throughout the Order, the Court uses pagination generated by the CM/ECF system.

Plaintiff Matthew Adams was part of that fallout.  He lost his job in September 2023, only a year after the company hired him as associate general counsel.  *See id.* ¶¶ 10, 15. Adams's role in the Shrensky dispute began in June 2023.  *See id.* ¶ 21.  Tensions between the Rodriguez family and Shrensky bubbled up that month when the family learned that Shrensky signed Rodriguez's name without permission to do so.  *Id.* ¶ 18.  Monica Marburg, a Fort Myer employee who also served as the Rodriguez family's personal counsel, demanded that Shrensky stop signing Rodriguez's name.  *Id.* ¶ 19.  Enter Adams.  *See id.* ¶ 21.  He reviewed Shrensky's email accusing Marburg of ethics violations and sought guidance from the Virginia State Bar about whether Marburg could represent Rodriguez against Shrensky while working for Fort Myer.  *Id.*

A month later, Shrensky "threatened to seek judicial dissolution" of the company unless Rodriguez agreed to fire Marburg and another Rodriguez-aligned employee.  *Id.* ¶ 22 (emphasis omitted).  Adams and his boss, General Counsel David Finch, asked outside counsel to research the implications of Shrensky's threat.  *Id.* ¶ 23.  The outside counsel responded with a memo describing the "profound consequences" of dissolution for the business.  *Id.* ¶¶ 24–25.  Adams and Finch discussed the memo with Shrensky but never shared it with Rodriguez or any other Fort Myer officer.  *Id.* ¶ 26.  Throughout July, Adams continued building a case against the Fort Myer employees Shrensky wanted gone.  *Id.* ¶ 28.  He helped Shrensky by writing a memo that attacked Rodriguez and Fort Myer employees.  *Id.*

Fort Myer fired Shrensky in early August.  *Id.* ¶ 30.  At the same time, Fort Myer suspended Adams's boss.  *Id.* ¶ 31; *see id.* ¶ 14.  Unaware that Adams had also helped Shrensky, Fort Myer asked Adams to serve as acting general counsel.  *Id.* ¶ 14.  By that point Shrensky and Fort Myer had sued one another.  *See id.* ¶¶ 29, 32.  According to Fort Myer, Adams refused to

cooperate in interviews by outside counsel related to that litigation and he continued to speak to Shrensky. *Id.* ¶ 32. He also deleted evidence of his efforts to help Shrensky. *Id.* In the end, Fort Myer fired Adams in early September. *Id.* ¶ 33.

Adams attributed his termination to discrimination, not the fallout with Shrensky, and in June 2025 filed this lawsuit. *See id.* ¶ 35. A few months ago, the Court denied Fort Myer's motion to dismiss Adams's claims. *See* Redacted Mem. Order, ECF No. 26. Fort Myer then raised counterclaims against Adams, alleging that he breached his fiduciary duties, committed legal malpractice, and converted company property. *See* Counterclaim ¶¶ 36–53. Adams now moves to dismiss those claims. *See* Mot. to Dismiss, ECF No. 29-1.

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But while a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.

Before turning to the merits of the counterclaims, the Court concludes that it has subject matter jurisdiction over them.  The Court has supplemental jurisdiction over all claims that "form part of the same case or controversy" as Adams's federal claims.  28 U.S.C. § 1367(a).  "A federal claim and a state law claim form part of the same Article III case or controversy if the two claims derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the [C]ourt comprises but one constitutional case."  *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 423–24 (D.C. Cir. 2006) (cleaned up).

A common nucleus of fact unites Fort Myer's counterclaims with Adams's federal claims.  All these claims turn on the reason for Adams's firing.  Adams believes that he was fired for discriminatory reasons.  *See* Redacted Compl. ¶¶ 36–58, ECF No. 6; Mot. to Dismiss at 2. Fort Myer, meanwhile, says that it fired Adams because he "had engaged and was continuing to engage in actions contrary to the [company's] best interests."  Counterclaim ¶ 33.  That story gives rise to Fort Myer's counterclaims and a consideration for Adams's discrimination claims. *See, e.g.*, *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) (explaining that in a discrimination case, when a defendant-employer "articulate[s] a legitimate, nondiscriminatory reason for its action" the "burden then shifts back to the plaintiff" to show that "the employer's stated reason for its action[] was in fact pretext for unlawful discrimination").  So supplemental jurisdiction exists.  *Cf. D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 206–07 (5th Cir. 2018) (approving supplemental jurisdiction over an employer's counterclaims, including breach of fiduciary duty, against an employee's husband because those counterclaims operated as a defense to the employee's claim).

4

**IV.**

With jurisdiction assured, the Court considers whether Fort Myer plausibly alleges its three counterclaims. For the reasons explained below, Fort Myer's fiduciary duty and legal malpractice claims pass muster, but its conversion claim requires dismissal.

**A.**

Start with breach of fiduciary duty. Counterclaim ¶¶ 36–41. To adequately plead such a claim, Fort Myer must allege facts sufficient to show: "(1) the existence of a fiduciary relationship with the defendant; (2) breach of a duty imposed by that fiduciary relationship; and (3) an injury caused by such breach." *Caesar v. Westchester Corp.*, 280 A.3d 176, 186 (D.C. 2022). Adams acknowledges that he owed Fort Myers a duty, *see* Mot. to Dismiss at 5, but contests breach and injury, *id.* at 6–12. At this early stage, Fort Myer alleges enough.

*First*, Fort Myer plausibly alleges that Adams breached his fiduciary duty by assisting Shrensky to the company's detriment. Before Shrensky's termination, Adams allegedly withheld information about Shrensky's dissolution threats from company leadership. *See* Counterclaim ¶¶ 26, 28. And after Shrensky's termination, Adams allegedly lied to Fort Myer's counsel in interviews and destroyed evidence. *See id.* ¶ 32. That is enough for now.

Adams responds with fact-intensive challenges to Fort Myer's breach theories. *See* Mot. to Dismiss at 6–11. These arguments are better suited for summary judgment. *See ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991) ("Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint."). One point does, however, warrant a word. Adams rightly questions whether Fort Myer misunderstands the scope of Adams's duty. As in-house counsel, Adams owed Fort Myer duties of care and loyalty. *See, e.g.*, *Bolton v. Crowley, Hoge & Fein,*

*P.C.*, 110 A.3d 575, 583–84 (D.C. 2015).  But those duties do not extend to any particular officer.  *See Egan v. McNamara*, 467 A.2d 733, 738 (D.C. 1983) ("When retained to represent a corporation, [an attorney] represents the entity, not its individual shareholders, officers, or directors.").  So Fort Myer cannot rely on Adams's disloyalty to Rodriguez or the Rodriguez family to show breach.  *See id.* at 738–39 (rejecting a similar theory).  But because Fort Myer plausibly alleges that Adams breached his duty to the company by assisting Shrensky, the Court need not decide whether any of Fort Myer's allegations alone would be insufficient.  To the extent Adams wishes to brief this issue further, he may do so later.

*Second*, Fort Myer plausibly alleges that Adams's breach injured the company.  Adams's attack on this front focuses on the conclusory injury allegations at the end of Fort Myer's counterclaims.  *See* Mot. to Dismiss at 11–12.  Of course, Fort Myer must offer "more than labels and conclusions, and a formulaic recitation of [injury] will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But drawing "all reasonable inferences" in Fort Myer's favor, *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (cleaned up), specific facts support the alleged injury.  Fort Myer alleges, for example, that Shrensky used Adams's work product in litigation against Fort Myer.  *See* Counterclaim ¶ 28.  More, the allegation that Adams lied to and obstructed litigation counsel suggests that Adams's duplicity generated additional litigation costs.  *See id.* ¶ 32.  With these allegations, Fort Myer carries its burden for now.  So the fiduciary duty claim proceeds.

**B.**

Next up is the legal malpractice claim.  Counterclaim ¶¶ 42–45.  It closely tracks the fiduciary duty claim.  Under D.C. law, Fort Myer must plead three elements: (1) that the attorney owed the plaintiff a duty of care; (2) the attorney breached that duty; and (3) a causal relationship

exists between the breach and the harm complained of. *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009).

Fort Myer carries its burden on this claim, just as it does on the fiduciary duty claim. The company claims that Adams violated his duty of care by failing to provide the degree of reasonable care expected of a legal professional under the circumstances. *See* Counterclaim ¶¶ 33, 43. It identifies many ways Adams arguably fell short of that standard, centering on his covert assistance to Shrensky at the company's expense. *See id.* ¶¶ 28, 32; Opp'n at 21–24, ECF No. 30. And it alleges that damages resulted. *See* Counterclaim ¶¶ 28, 32, 35.

In response, Adams repeats his premature fact-specific objections and adds that the legal malpractice and fiduciary duty claims are necessarily duplicative of one another such that only one can continue. *See* Mot. to Dismiss at 12–13. To be sure, "when a plaintiff's breach-of-fiduciary duty claim rests on the same factual allegations and requests the same relief as [a] professional malpractice claim, a court as a matter of judicial economy, should dismiss one of the claims as duplicative." *Guo Wengui v. Clark Hill, PLC*, 440 F. Supp. 3d 30, 39 (D.D.C. 2020) (cleaned up). Fort Myer may well have to pick between the claims down the line, but at this early stage "it would be premature to dismiss any of the [two] as duplicative, given the fact-dependent nature of such an inquiry." *Id.* at 40. Adams fairly points out that Fort Myer's fiduciary duty and legal malpractice claims involve similar facts. *See* Mot. to Dismiss at 12–13. But the claims might ultimately turn on distinct wrongs and judicial economy does not favor dismissal at this early stage. *Accord Guo Wengui*, 440 F. Supp. 3d at 40 (denying a motion to dismiss allegedly duplicative claims for the same reasons). So Fort Myer's claims can both proceed for now and Adams can challenge the claims as duplicative if necessary after discovery sharpens the issues.

## C.

Last up is Fort Myer's conversion claim.  Under D.C. law, conversion is defined as "an unlawful exercise of ownership, dominion and control over the [personal property] of another in denial or repudiation of his right to such property." *Blanken v. Harris, Upham & Co.*, 359 A.2d 281, 283 (D.C. 1976).  Unlike the other claims, this one requires dismissal.

The claim is hard to evaluate from the start.  Fort Myer does not identify the specific property that Adams allegedly converted.  It instead refers generally to "documents, files, data and property."  Counterclaim ¶ 47.  All the property in question appears to be digital.  *See, e.g.*, *id.* ¶ 49 ("Adams obtained such ownership, dominion and control over the FMCC Property through improper means, including downloading confidential and privileged information to his personal Dropbox and email account and accessing the email accounts of other FMCC employees.").  Indeed, Fort Myer does not dispute Adams's framing of the property in this way.  *Compare* Mot. to Dismiss at 20–21, *with* Opp'n at 25–26.  So the Court follows suit.  But that raises another problem.  It is unclear whether D.C. law permits a conversion claim for intangible property.  *See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 963–64 (D.C. Cir. 2004); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 6 (D.D.C. 2013).

Even assuming Fort Myer adequately identified property that could give rise to a conversion claim, its claim would still fail without plausible allegations that Adams exercised "ownership, dominion or control" over the property.  *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 338 (D.D.C. 2011).  To show the "ownership, dominion, or control" element, Fort Myer must allege that Adams "d[id] something that 'seriously interfere[d]' with [Fort Myer's] right to control the property in question." *Id.* at 340 (quoting *Blanken*, 359 A.2d at 283).  Fort Myer primarily offers conclusory allegations,

8

asserting, for example, that Adams "obtained" "ownership, dominion and control" over the property.  Counterclaim ¶ 49; *see id.* ¶ 50 ("Through Adams' removal and refusal to return the FMCC Property, FMCC has been deprived of its possessory rights in its property.").  The Court need not credit those assertions.  *See Twombly*, 550 U.S. at 555.  Legal jargon is insufficient.

And the only factual detail Fort Myer offers indicates a nonactionable claim.  Fort Myer claims that Adams "download[ed] confidential and privileged information to his personal Dropbox and email account and access[ed] the email accounts of other FMCC employees." Counterclaim ¶ 49.  As Adams points out, however, courts routinely reject conversion claims based on the mere downloading or accessing of digital data.  Mot. to Dismiss at 20; *see, e.g.*, *Council on Am.-Islamic Rels. Action Network*, 793 F. Supp. 2d at 340.

That is because a conversion claim lies only when the offender's actions "seriously interfere[]" with the property owner's control.  *Blanken*, 359 A.2d at 283; *see also Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 196 (D.D.C. 2017) (similar).  Merely downloading or accessing another's data does not cross that threshold.  *See, e.g.*, *Council on Am.-Islamic Rels. Action Network*, 793 F. Supp. 2d at 340 (rejecting as insufficient to establish a conversion claim that "Defendants accessed and copied electronic data").  Because Fort Myer does not plausibly allege any further interference with its property, the conversion claim requires dismissal.

## V.

To recap, the Court dismisses Fort Myer's conversion claim but allows the breach of fiduciary duty and legal malpractice claims to proceed.  Adams, to be sure, raises significant concerns about the viability of the remaining claims.  It remains to be seen whether they will

survive summary judgment.  But for now, Fort Myer offers enough to surpass the motion-to-dismiss stage's low bar.

For all these reasons, it is hereby

**ORDERED** that the [29] Motion to Dismiss is **GRANTED IN PART** as to the conversion claim and **DENIED IN PART** as to the remaining claims.


Dated:  April 30, 2026                                    TREVOR N. McFADDEN, U.S.D.J.

10